## CROSS v. KISTLER.

1  MORTGAGEE OF CHATTELS FOR ACCOMMODATION BOUND ONLY TO ORDINARY DILIGENCE.— A party accepting a note and chattel mortgage, in his own name, to secure his own claim as well as the individual claim of another, as a matter of accommodation to the latter, and without compensation, is only bound to exercise ordinary diligence, and is not liable for a failure to realize on the securities without proof of negligence.

2. VERBAL PROMISE TO ANSWER FOR DEBT OF ANOTHER — STATUTE OF FRAUDS.— A special promise to answer for the debt of another, not in writing, is void under the statute of frauds.

3. EVIDENCE — WHEN ORAL EVIDENCE OF FACTS PERTAINING TO MATTERS REFERRED TO IN WRITINGS OF THE PARTIES ADMISSIBLE.— Extrinsic facts and circumstances relating to the parties and their actual dealings with each other in reference to matters referred to in writings may be shown by oral evidence; but mere naked contemporaneous declarations, and the unauthorized statements of third parties, are not admissible.

4. SAME — ADMISSIBILITY OF LETTERS SIGNED BY THE PARTIES.— Letters signed by the parties, tending to explain the transaction in litigation, are admissible in evidence.

5. SAME — INCONSISTENT CONDUCT OF A PARTY ADMISSIBLE.— The previous conduct of a party, inconsistent with the claim upon which he relied at the trial, is admissible in evidence against him.

6. PRACTICE WHEN FINDING UNSUPPORTED.— Where the evidence does not tend to support the finding, the judgment will be reversed as being against the evidence.

*Appeal from Arapahoe County Court.*

Messrs. COE & FREEMAN, for appellant.

MR. JUSTICE ELLIOTT delivered the opinion of the court.

Jacob Kistler was plaintiff and D. K. Cross was defendant below. The principal facts, as shown by the evidence on the trial, are as follows: In the summer of 1886, one E. J. Leighton was indebted to the plaintiff Kistler in the sum of about $200, — perhaps a little more,— and also to the defendant Cross in something over $200. Cross and Kistler, residing in Denver, Colo., made a united effort to secure their respective claims, which resulted in Leighton's executing a note and chattel mortgage payable to Cross for the sum of $450. The mortgaged property was located in the territory of Wyoming. By agreement between Cross and Kistler, they placed the mortgage securities in the State National Bank of Denver for collection, the proceeds to be credited to their joint account, though their respective claims against Leighton were several, and entirely independent.

Before the mortgage note matured, Cross went east. Before going it was arranged between himself and Kistler that he should endeavor to secure payment of the mortgage note from Leighton, whom he expected to meet in Boston. He met Leighton, who represented that he had no money, and could not pay the mortgage note, but proposed to renew it. He finally gave Cross a power of attorney and bill of sale of everything he had in Wyoming, including the mortgaged property, as further security. The following letters written by Cross, while east, to his nephew in Denver, were read or shown to Kistler as soon as received:

"September 27, 1886. Leighton will make new note and new mortgage, so you need not feel worried about that matter. I shall see that Kistler's interests are secured the same as before. The property will be sold by me, but I am to have plenty of time to dispose of it."

"October 1, 1886. I have just received from Leighton full power of attorney to sell all of his property in Wyoming, signed by himself and Mrs. L. Everything he owns is in my keeping to sell. You can withdraw that note from the bank, and tell Mr. Kistler that I shall do nothing until I see him, and I will protect his interests the same as under the former agreement. I have seen a lawyer, who assures me that our account, and that of Mr. Kistler, is amply secured."

It further appears that only a very small sum was realized from the mortgaged property by Cross, but all that he did receive was placed in the State National Bank, according to agreement. There was some conflict in the evidence on unimportant points, which need not now be noticed. The court found in favor of the plaintiff in the sum of $200, and rendered judgment therefor against the defendant, who brings the case to this court by appeal. Numerous errors are assigned.

The case was originally brought in a justice's court, so

there are no written pleadings. The principal assignments of error question the sufficiency of the evidence, under the law, to warrant the finding and judgment. It would seem that the trial court must have held that the defendant had in some way become liable to pay Leighton's indebtedness to Kistler, or else that he had been negligent in acting as trustee under the mortgage or power of attorney, whereby Kistler lost the benefit of his security upon the mortgaged property. The finding of the court cannot be maintained on the latter ground, for several reasons: *First.* There was no evidence of the value of the mortgaged property, nor even of its existence, except so far as Cross got returns from the disposition that was made of it. Hence there was no proper measure of damages upon which to base such finding. *Secondly.* Cross was acting as trustee for Kistler, without consideration, and as an act of accommodation merely, and the evidence did not tend to show that Cross could have secured more than he did out of the mortgaged property by the exercise of greater care; and he was only bound to the exercise of ordinary diligence under the circumstances. There was no evidence of negligence on the part of Cross.

The next question to be considered is, did the evidence tend to show a binding promise, contract or undertaking on the part of Cross to pay Leighton's indebtedness to Kistler or to see that the same should be paid? It is to be observed that Cross had nothing whatever to do in procuring the credit to be given by Kistler to Leighton. The indebtedness was the individual and several liability of Leighton. It does not appear that Cross ever heard of it until about the time he and Kistler united their efforts to secure each his own claim. The execution of the first note and mortgage in the name of Cross was not done at his suggestion. They were made out and sent to him in that form by Leighton; and, with the concurrence

of Kistler, he accepted them, and agreed, without compensation, to divide the proceeds so that Kistler should have equal benefit of the security.

There was evidence tending to show that Kistler had begun an attachment suit in Wyoming to secure his debt against Leighton prior to the reception of the first mortgage, and that he was induced by Cross to dismiss this suit and rely upon the note and mortgage. The evidence does not, however, show, nor tend to show, as a consideration for the dismissal of the attachment, that Cross promised to pay Leighton's debt to Kistler or guarantied that the note and mortgage should prove effective to secure such debt. It does not appear that Cross used anything more than mere persuasion or expression of opinion as to what would be the best course to be pursued for their mutual benefit. There is no pretense that Cross made any misrepresentation or acted in bad faith in the transaction. Cross was the only party who took any particular pains or trouble to secure anything out of the mortgaged property, and what he did get was left with the bank to be divided as agreed. This action is not brought to compel an accounting concerning said proceeds, so the finding cannot be sustained on that ground.

There was considerable conflict in the testimony as to what was said by the nephew of Cross to Kistler when the letters were exhibited; Kistler claiming that the nephew then and there promised unconditionally that Cross would pay Kistler's claim against Leighton, or see that it was paid. The nephew denied this. It is unnecessary to settle this conflict. The testimony was objected to, and was not competent for the purpose for which it was offered. At most it showed only a special promise to answer for the debt of another, not in writing, and hence void under the statute of frauds. The letters showed for themselves what Cross promised; and it does not appear that the nephew was authorized in any way to bind his uncle by any other or different under-

taking. Extrinsic facts and circumstances relating to the parties, and their actual dealings with each other, in reference to the matters referred to in the letters, might be shown by oral evidence, but certainly not the mere naked contemporaneous oral declarations of an unauthorized third party. The first letter showed that Leighton had promised to give a new note and mortgage, but there is no evidence that they were ever given. The second letter showed that Cross had received a full power of attorney to dispose of Leighton's property, and would protect Kistler's interests under the new security *the same as under the former agreement;* but it did not assume to give him any greater protection. The original security was taken in the name of Cross, and immediately deposited in the bank for the mutual protection of himself and Kistler. The new security was also taken in the name of Cross, and the letter was simply an acknowledgment by him that Kistler was entitled to be protected under the new the same as under the original security, and no further. Viewed in the light of extrinsic circumstances, and the dealings of the parties, there was no ambiguity as to the meaning of the letters.

The defendant offered to produce in evidence the letter sent by Cross and Kistler to Leighton, demanding security for their respective claims. The letter, in connection with other testimony, tended to explain how the first note and chattel mortgage came to be executed and sent as they were, and was admissible, though perhaps merely cumulative.

Testimony as to the alleged unconditional promise of Cross to pay Leighton's debt having been admitted, the defendant should have been permitted to show that Kistler was trying to negotiate a settlement with Leighton after the time he claimed Cross had made such unconditional promise; such conduct being inconsistent with the claim that he relied upon the alleged promise.

It is unnecessary to consider further the assignments

of error. Under the law applicable to such cases, we are constrained to say that the finding of the court was against the evidence. Cross and Kistler were undoubtedly both innocent sufferers by the failure of Leighton to pay or adequately secure their respective claims; but, under the evidence, we can see no legal or moral reason why Cross should pay Kistler's claim, in addition to losing his own. The judgment must be reversed and the cause remanded.

*Reversed.*